IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SANG NGUYEN, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | CAUSE NO. EP-25-CV-323-KC |
| § | |
| PAM BONDI, U.S. Attorney General § | |
| § | |
| Respondent. § | |

## ORDER

On this day, the Court considered Sang Nguyen's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 3. For the following reasons, the Petition is **GRANTED IN PART**.

### I.   BACKGROUND

This case involves Nguyen's challenge to Respondent's decision to detain him without a bond hearing after he was released pursuant to an Order of Supervision ("OSUP") for nearly thirteen years. The following facts are derived from the allegations in the Petition and the documents submitted by the parties.

   A.   **Arrival in the United States & Immigration Proceedings**

Nguyen appears to have been born in Vietnam in 1955. *See* Pet. 1. However, due to war and an unstable government at the time of his birth, his parents did not register him with the Vietnamese government. *Id.* Nguyen was first admitted into the United States as a refugee in 1980. Decl. Martin A. Sarellano ("Sarellano Decl.") ¶ 5, ECF No. 8-2. He was brought from a refugee camp in Malaysia. *See* Pet. 1.

In 1982, Nguyen adjusted his status to lawful permanent resident. Sarellano Decl. ¶ 5. He applied for naturalization in 2000 and passed the examination on July 3, 2001. *Id.* Before he

could be sworn in as a naturalized citizen, immigration officers became aware of undisclosed criminal convictions and issued him a Notice to Appear in immigration court for removal proceedings. *Id.*

Nguyen was convicted of rape of a spouse by force in California in 1993 and was sentenced to incarceration followed by probation. *Id.* ¶ 6. In 1997, he was also convicted of driving under intoxication and sentenced to thirty days in jail. *Id.* Nguyen currently has an active felony warrant for a probation violation in California for failure to appear. *Id.*

In 2011, Nguyen failed to appear for his removal proceeding and the Immigration Judge ("IJ") issued a final order of removal. *Id.* ¶¶ 4–5; Resp, Ex. A ("Removal Order"), ECF No. 8-1. He was later located and arrested by Fugitive Operations of Immigration and Customs Enforcement ("ICE"). Sarellano Decl. ¶ 4. On November 30, 2012, ICE released Nguyen pursuant to an OSUP. *Id.* Since that time, Nguyen has "reported to the U.S. immigration" regarding his whereabouts. *See* Pet. 2. Nguyen is a monk and, prior to his re-detention, was living at a monastery in New Mexico. *See id.*

B. **2025 Re-Detention and Efforts to Remove Nguyen to Vietnam**

On July 23, 2025, at his most recent check-in with ICE, Nugyen was re-detained. Sarellano Decl. ¶ 4. ICE decided to revoke Nguyen's OSUP on the basis "that circumstances had changed such that there is significant likelihood of removal to Vietnam in the reasonably foreseeable future." *Id.*

Nguyen was initially detained at the El Paso Processing Center. Sarellano Decl. ¶ 8. On September 4, 2025, ICE transferred Nguyen to the Louisiana State Penitentiary in Angola, Louisiana. *Id.* On October 16, Nguyen was transferred to the Montgomery Processing Center in Conroe, Texas. Status Report 2, ECF No. 16. And on October 30, he was transferred to the

California City Detention Facility. 2d Status Report 1, ECF No. 18. ICE has initiated the ninety-day post-order custody review ("POCR") process for Nguyen. Status Report 2. But it does not appear that a determination of whether he should remain in custody has been made. *See generally id.*

On September 2, 2025, ICE submitted a travel document request to Vietnam for Nguyen. Sarellano Decl. ¶ 7. According to ICE Headquarters Removal International Operations, Vietnam is issuing travel documents on average within thirty days of a request. *Id.* ICE has successfully removed over 400 Vietnamese nationals to Vietnam in 2025, though it is unclear whether any of those removals were for people like Nguyen, whose birth seven decades ago was never registered with the Vietnamese government. *Id.* At some point after ICE submitted its request on Nguyen's behalf, Vietnam returned the travel document packet for corrections and additional documents. Status Report 2. On October 20, 2025, ICE resubmitted the travel document request with the corrections and documents. *Id.* Nguyen states that he is not a citizen of Vietnam and Vietnam will not issue travel documents for him. Pet. 1–2.

C.  **Procedural History**

On August 19, 2025, Nguyen filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking an order for his release from ICE custody. Pet. 1–3. Nguyen challenges the legality of his detention on constitutional grounds. *Id.* at 1.

The Court ordered Respondent to show cause why Nguyen's application for a writ of habeas corpus should not be granted. Sept. 3, 2025, Order, ECF No. 6. In answer to the Court's Order, Respondent filed her Response, ECF No. 8, in opposition to Nguyen's Petition. Nguyen did not file a reply or any other materials in support of his Petition. On October 9, the Court ordered Respondent to file a status report stating whether Vietnam had approved the travel

document request for Nguyen, and if not, the status of the request.  Oct. 9, 2025, Order, ECF No. 14.  On October 21, Respondent filed the Status Report.

Because the Court grants in part the Petition, while taking as true the facts as presented by Respondent, it is unnecessary to hold a hearing.  *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.     DISCUSSION

Nguyen seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates his constitutional rights.  Pet. 1.  Nguyen states that Respondent is "violating [his] liberty, under coerce and duress in which they [are] unlawfully detaining [him]" and "violat[ing] [his] Constitution[al] rights, Fourth Amendment, unreasonable restrained without probable cause."  *Id.*  Construing Nguyen's pro se Petition liberally, the Court understands Nguyen to challenge the legality of his detention under the due process clause of the Fifth Amendment and the Fourth Amendment.[1]  *See, e.g.*, *United States v. Villarreal*, 87 F.4th 689, 693–95 (5th Cir. 2023).

Respondent makes four arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Nguyen fails to name the proper respondent; (3) § 1231(a) mandates Nguyen's detention for ninety days and allows for his continued detention until there is no significant likelihood of removal in the reasonably foreseeable future; and (4) Nguyen's due process claim is premature because he has not been detained for six months.  Resp. 4–10.

---

[1] Because the Court grants in part Nguyen's Petition on procedural due process grounds, the Court need not reach his Fourth Amendment claim.

4

This Court recently decided several other petitions for writs of habeas corpus brought by immigration detainees challenging their detention without a bond hearing. *See, e.g.*, *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *3 (W.D. Tex. Oct. 24, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). One of which specifically addressed a challenge by a detainee subject to a final removal order and detained pursuant to § 1231(a) of the Immigration and Nationality Act ("INA"). *See Trejo*, 2025 WL 2992187, at *3. Respondent relies on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

    A.    **Jurisdiction**

First, Respondent argues that the Court is stripped of jurisdiction by 8 U.S.C. § 1252(g) because Nguyen "essentially" seeks to challenge the Attorney General's decision and action to execute his final removal order. Resp. 5–6. The Court already rejected essentially the same argument, albeit as it related to challenges to the Attorney General's decision to commence removal proceedings, not execute removal orders. *See Santiago*, 2025 WL 2792588, at *3–5 (rejecting § 1252(g) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (same). Respondent makes no effort to distinguish those prior jurisdictional analyses. Resp. 6. And the cases relied on by Respondent support the Court's prior conclusion that § 1252(g) does not bar it from hearing challenges to detention, as opposed to challenges to the commencement of removal

proceedings, adjudication of removal proceedings, or execution of a removal order. *See id.* In each case cited by Respondent, the noncitizen either sought to compel the initiation of removal proceedings, stay removal proceedings or deportation, or challenge selective enforcement of removal, all of which fall squarely within § 1252(g). None address challenges to detention.

In sum, the Court finds that it has jurisdiction to consider Nguyen's challenge to his detention. *See Trejo*, 2025 WL 2992187, at *3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)).

### B. Custodian

Respondent next argues that Nguyen failed to name his immediate custodian and that he must do so "to ensure timely compliance with any future court orders." Resp. 4–5.

A habeas petition must "allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known." 28 U.S.C. § 2242. "[T]he immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Aguilar v. Johnson*, No. 25-cv-1904, 2025 WL 2099201, at *1 (N.D. Tex. July 25, 2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 439–40 (2004)). "For a person being detained in connection with an immigration matter, the immediate custodian is the warden of the detention center." *Id.* at *2 (quoting *Khalil v. Joyce*, 777 F. Supp. 3d 369, 396 (D.N.J. 2025)). The failure to name the proper respondent, however, is "a mere procedural defect" which can be corrected by amendment of the petition. *Castro Flores v. Dretke*, 120 F. App'x 537, 539 (5th Cir. 2005) (citing *West v. State of La.*, 478 F.2d 1026, 1029–30 (5th Cir. 1973), *vacated in part on other grounds*, 510 F.2d 363 (5th Cir. 1975)). And "a pro se plaintiff who has named the wrong defendant should be permitted to amend his

pleadings if there is a potential ground for relief." *Antonelli v. Lappin*, 134 F. App'x 700, 701 (5th Cir. 2005) (citation omitted).

At the time Nguyen filed his Petition, he was detained at the El Paso Processing Center, *see* Sarellano Decl. ¶ 8, and should have named the Warden of the El Paso Processing Center as a Respondent. The correct Respondent now, however, is the Warden of the California City Detention Center, Nguyen's current custodian. *See* 2d Status Report 1; *see also Aguilar*, 2025 WL 2099201, at *1 (citation omitted). Because Nguyen is entitled to relief on his due process claim, amendment of his pleadings should be allowed. *See Antonelli*, 134 F. App'x at 701. And because Nguyen is pro se and has not moved to amend, the Court may sua sponte add the proper Respondent to the case. *See Pichardo v. Hanson*, No. 15-cv-118, 2017 WL 1837092, at *1 n.1 (N.D. Tex. May 8, 2017) (directing the clerk of court to add petitioner's current custodian as a respondent); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). The Court exercises its discretion to do so.

    **C.**    **Section 1231(a) of the INA**

Respondent argues that Nguyen's detention is lawful and, up and until October 21, 2025, mandatory under 8 U.S.C. § 1231(a). Resp. 5. October 21, however, has passed. Thus, Respondent's argument regarding mandatory detention is now moot. As to the legality of Nguyen's continued detention under § 1231(a) beyond the ninety-day mandatory period, whether his detention, at this point, "bear[s] [a] reasonable relation to the purpose for which [he is] committed" is a question of due process under the Fifth Amendment. *See Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

7

**D.     Due Process**

Respondent argues that Nguyen's due process claim is premature because he has been detained for less than six months. Resp. 7–8. And even if his claim was ripe, Respondent argues that it fails because there is a "likelihood of removal in the reasonably foreseeable future." *Id.* at 9.

Because Nguyen has been detained for less than six months, his *Zadvydas* claim is likely premature. *See Zadvydas*, 533 U.S. at 701. The Court's analysis of Nguyen's due process claim, however, does not end there. This Court recently held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Trejo*, 2025 WL 2992187, at *6–7. By virtue of the liberty interest obtained through their release, this Court held that a § 1231(a) re-detainee could also bring a distinct procedural due process claim. *See id*.

Unlike a typical *Zadvydas* petitioner, who is detained continuously from the time of their final removal order, Nguyen was released pursuant to an OSUP and lived at liberty in the United States for nearly thirteen years. Sarellano Decl. ¶¶ 4–5. Accordingly, the Court does not find that Nguyen's due process claim is foreclosed by the current length of his detention.[2] *See Trejo*, 2025 WL 2992187, at *7.

---

[2] District courts faced with due process challenges by re-detained Vietnamese nationals have taken different analytical approaches. Some have analyzed these claims under the regulations governing revocation of release, 8 C.F.R. § 241.13(i), in a quasi-*Accardi* doctrine analysis, finding due process violations where the respondents violated their own regulations by revoking release without sufficient evidence that removal was significantly likely to occur in the reasonably foreseeable future. *See, e.g.*, *Phan v. Beccerra*, No. 25-cv-1757, 2025 WL 1993735, at *3–5 (E.D. Cal. July 16, 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025). While other courts, when the petitioner has been detained for more than six months, have analyzed these claims under the *Zadvydas* framework. *See, e.g.*, *Tran v. Scott*, No. 25-cv-1886, 2025 WL 2898638, at *3–5 (W.D. Wash. Oct. 12, 2025); *Tran v. Baker* ("*Tran II*"), No. 25-cv-1598, 2025 WL 2085020, at *5–7 (D. Md. July 24, 2025). Still others have analyzed both regulatory and due process challenges under the *Zadvydas* framework, even when the petitioner had not been detained for over six months. *See, e.g.*, *Nguyen v. Noem* ("*Nguyen II*"), No. 25-cv-57, 2025 WL 2737803, at *7–10 (N.D. Tex. Aug. 10, 2025). Nguyen does not frame his due process

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

1.      **Private Interest**

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests.'" *Martinez*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondent does not engage with the *Mathews* factors, but her position appears to be that Nguyen does not acquire a liberty interest until his detention becomes unreasonably prolonged because he is subject to a reinstated final removal order and thus detention under §1231(a) without a statutory right to a bond hearing. Resp. 7–10. Yet Respondent fails to contend with the liberty interest created by the fact that after Nguyen was subject to a final order of removal, he was released pursuant to an OSUP and has been at liberty for nearly thirteen years. *See Garcia*, 2025 WL 1927596, at *3.

---

claim under any particular framework—*Zadvydas*, *Mathews v. Eldridge*, *Accardi*, or otherwise. Because Nguyen has not been detained for more than six months, and his *Zadvydas* claim is likely premature, the Court analyzes his due process claim under the *Mathews v. Eldridge* test and considers whether Respondent complied with 8 C.F.R. § 241.13(i) to the extent it bears on this analysis.

This position finds support in the longstanding principle in the criminal context that due process requires a pre-deprivation hearing before the revocation of parole.  *See Espinoza v. Kaiser*, No. 25-cv-1101, 2025 WL 2581185, at *9 (E.D. Cal. Sept. 5, 2025*)* (citing *Young v. Harper*, 520 U.S. 143, 147–49 (1997)).  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  Parolees thus have a protected liberty interest in their "continued liberty." *Id.* (citation omitted).  Many district courts, including this one, have extended this reasoning to the immigration context when analyzing § 1225(b) detainee challenges to mandatory detention and held that once released from immigration custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Lopez-Arevelo*, 2025 WL 2691828 at *10–11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)); *accord M.S.L.*, 2025 WL 2430267, at *8 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)).

Because he spent nearly thirteen years at liberty in the United States pursuant to an OSUP, Nguyen possesses a strong interest in his continued freedom from detention.

### 2. Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, No. 25-cv-1151, 2025 WL 1459154, at *8 (D. Minn. May 21, 2025)).  Respondent appears to argue that the POCR process affords Nguyen sufficient due

process.[3]  Resp. 7–8.  Although ICE has initiated the ninety-day POCR process for Nguyen, it does not appear that a determination has been made.  *See* Status Report 2.

The POCR process, however, raises due process concerns.  Foremost, the decision is made by ICE, not a neutral arbiter.  *See Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("And, of course, an impartial decision maker is essential."); *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1004 (5th Cir. 2016) (citation omitted) ("The basic requirement of constitutional [procedural] due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer."); *Rosario v. Searls*, No. 23-cv-6424, 2023 WL 7326047, at *3 (W.D.N.Y. Nov. 7, 2023) (finding custody determination by ICE to be insufficient due process because decision was not made by a neutral decisionmaker); *Kabba v. Barr*, 403 F. Supp. 3d 180, 189 (W.D.N.Y. 2019) (same); *cf. Flores v. Rosen*, 984 F.3d 720, 734 (9th Cir. 2020) (holding bond hearing before a Department of Health and Human Services adjudicator instead of an IJ sufficient because due process only requires custody determinations to be "reviewed by an adjudicator 'independent' from the entity making the determinations.").  Although the POCR process was implemented by DHS after *Zadvydas* to address due process concerns of indefinite detention of § 1231(a) detainees, the *Zadvydas* Court, in determining that the statute raised such concerns, took issue with that fact that "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of

---

[3] Following *Zadvydas*, the Department of Homeland Security ("DHS") implemented regulations requiring officials to conduct a POCR before the ninety-day removal period expires if the noncitizen's removal cannot be accomplished within that time frame.  8 C.F.R. § 241.4(h)(1), (k)(1)(i).  During the POCR, officials review the detainee's records and other evidence and consider a long list of factors geared toward determining (1) flight risk, (2) danger to the community, (3) ability to adjust to life in the community, and (4) likelihood of obtaining travel documents.  *Id.* at § 241.4(e)–(g).  After the initial POCR, if the noncitizen is not released or removed, a second review must be done about three months later, with successive reviews done at least annually thereafter.  *Id.* at § 241.4(k)(2)(ii), (iii), (v).

11

proving he is not dangerous, without . . . significant later judicial review." *Zadvydas*, 533 U.S. at 692.  The POCR process does not address these facets of *Zadvydas*.

Second, there is no right to appeal.  *See, e.g.*, *Wilson v. N. E. Indep. Sch. Dist.*, No. 5:14-cv-140-RP, 2015 WL 13716013, at *7 (W.D. Tex. Sept. 30, 2015) (finding high risk of erroneous deprivation where school district officials had broad discretion to ban members of the public from school board meetings and there was no process to appeal such bans).  Taken together, these procedural deficiencies in the POCR process create a high risk that Nguyen will continue to be erroneously deprived of his liberty.[4]

This risk can be easily ameliorated through a bond hearing.  Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness."  *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3).  Because such a proceeding would give Nguyen the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond, it would greatly reduce the risk of an erroneous deprivation of his liberty.  Therefore, the second *Mathews* factor also supports Nguyen's claim that he has been denied procedural due process.

### 3. Government's Interest

On the final factor, Respondent states that Nguyen was re-detained pursuant to "a final order of removal while ICE arranges his removal to Vietnam."  Resp. 4.  Of course, the Government has an interest in ensuring that noncitizens appear for their removal hearings, do not

---

[4] Although Respondent states that ICE revoked Nguyen's OSUP, *see* Resp. 5, the record does not indicate that ICE followed the notice and informal interview requirements of 8 C.F.R. §§ 241.4(l)(1–2), 241.13(h)(4)(i)(3).  Some courts have found such a failure to be, in and of itself, a violation of due process mandating habeas relief.  *See, e.g.*, *Bui v. Warden of Otay Mesa Det. Facility*, No. 25-cv-2111, 2025 WL 2988356, at *5 (S.D. Cal. Oct. 23, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 158–170 (W.D.N.Y. 2025); *M.S.L.*, 2025 WL 2430267 at *8–12.

pose a danger to the community, and that it can successfully effectuate removal orders. *See Zadvydas*, 533 U.S. at 690–91; *Demore v. Kim*, 538 U.S. 510, 528 (2003).

But the decision to release Nguyen pursuant to an OSUP almost thirteen years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018). Although Nugyen failed to appear for his removal hearing in 2011, he was released under the OSUP after that failure to appear, and since then, has routinely checked in with ICE, including on July 23, 2025, the day that he was re-detained. *See* Pet. 2; Sarellano Decl. ¶ 4. There is thus little evidence in the record indicating that Nguyen would be a flight risk.[5] Nor is there anything in the record to indicate that he has committed any crimes or endangered anyone during his nearly thirteen years at liberty in the United States.

The only thing that has changed since Nguyen's release in 2012 is that ICE now believes that "there is a significant likelihood of removal to Vietnam in the reasonably foreseeable future." Sarellano Decl. ¶ 4. And while the Government has an interest in re-detaining a noncitizen to effectuate their removal, as reflected in the regulations governing revocation of an OSUP, there must be "a significant likelihood that the alien may be removed in the reasonably foreseeable future" to warrant re-detention based on such changed circumstances. *See* 8 C.F.R. § 241.13.

Respondent argues that Nguyen's removal is now significantly likely to occur in the reasonably foreseeable future because "in 2025 ICE has successfully removed over 400

---

[5] Although Respondent states that Nguyen has an active felony warrant for a probation violation in California for failure to appear, the record does not reveal whether that warrant was active prior to his release in 2012 and thus considered in ICE's determination that he was not a flight risk and could be released under an OSUP. Nonetheless, any concerns related to this warrant, along with any other concerns related to Nguyen's flight risk and dangerousness, can be addressed through a bond hearing.

13

Vietnamese nationals to Vietnam." *Id.* ¶ 7. Respondent, however, does not indicate whether these Vietnamese nationals were, like Nguyen, not registered with the Vietnamese government at the time of their birth and came to the United States from a refugee camp prior to the establishment of diplomatic relations between Vietnam and the United States in 1995. These statistics are thus insufficient to establish that a change in circumstances occurred such that Nguyen's removal is now likely to occur warranting his re-detention. *See Nguyen*, 788 F. Supp. 3d at 151–52 (finding declaration asserting number of Vietnamese nationals removed insufficient to establish likelihood of removal where declaration failed to include the total number of requests sent to Vietnam and the number of successful removals of pre-1995 refugees); *Phan*, 2025 WL 1993735, at *4 (finding evidence of one pre-1995 Vietnamese national's removal insufficient to establish likelihood of removal); *cf. Tran II*, 2025 WL 2085020, at *5 (finding evidence sufficient to establish likelihood of removal where ICE declaration included statistics for successful pre-1995 removals, the petitioner's travel document request was sent to Vietnam prior to her detention, and she was provided a timeline to expect a meeting with the consulate).

  Moreover, ICE did not submit a travel document request for Nguyen until after he filed the Petition. *See* Sarellano Decl. ¶ 7. And ICE did not return the travel document request to Vietnam with the requested "corrections and additional documents" until the day before Respondent's status report was due. *See* Status Report 2. Respondent has not attached copies of the returned travel document request or ICE's corrected request, or any details on the corrections and additional documents requested by Vietnam, that might indicate whether the barriers to Nguyen's repatriation have been removed. Nor has Respondent provided an updated timeline for Vietnam's expected issuance of travel documents for Nguyen. While it may be that Nguyen's removal to Vietnam is now possible, where it was previously impossible, Respondents have not

14

shown that his removal is significantly likely to occur in the reasonably foreseeable future. *See Tran*, 2025 WL 2898638, at *4–5 (finding no significant likelihood of removal where travel document request was not submitted until after the petitioner was re-detained and had filed a habeas petition, the respondents failed to attach the travel document request to the supporting ICE declaration, and failed to provide pre-1995 removal statistics); *cf. Nguyen II*, 2025 WL 2737803, at *10 (finding significant likelihood of removal where supporting ICE declaration attested to the occurrence of pre-1995 removals and travel documents were in fact obtained from Vietnam for the petitioner).

To the extent that the possibility of his removal to Vietnam might impact Nguyen's risk of flight, the Court makes no such determination. Any such concerns regarding Nguyen's flight risk or dangerousness would be squarely addressed in a bond hearing. *See Martinez*, 2025 WL 2598379, at *4. Thus, the third *Mathews* factor also weighs in Nguyen's favor.

Because all three *Mathews* factors support Nguyen's position, the Court finds that detaining him without an individualized assessment of his flight risk and dangerousness by an IJ deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. *See Lopez-Arevelo*, 2025 WL 2691828, at *13; *see also Garcia*, 2025 WL 1927596, at *5–6.

### III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 3, is **GRANTED IN PART**. The Court **ORDERS** that, <u>on or before November 14, 2025</u>, Respondent shall either: (1) provide Nguyen with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of

15

dangerousness or flight risk, Nguyen's continued detention; or (2) release Nguyen from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before November 14, 2025**, Respondent shall **FILE** notice informing the Court whether Nguyen has been released from custody. If Nguyen has not been released from custody, Respondent shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondent shall further inform the Court, in detail, of the reasons for the IJ's decision.

**There will be no extensions of the November 14, 2025, deadlines.**

**IT IS FURTHER ORDERED** that the Court of Clerk shall **ADD** the Warden of the California City Detention Facility as a Respondent.

**SO ORDERED**.

**SIGNED this 7th day of November, 2025.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE